I'd like to thank the Court, first of all, for moving the hearing on this matter in light of the passing of my colleague in October. He was slated to argue this, and I appreciate that Your Honors accommodated us and moved the hearing to today's date. I would also respectfully like to reserve five minutes of my time for rebuttal. The nature of this appeal, Your Honors, is an appeal from the district court's order grant and summary judgment. Could you pull the mics or something a little closer? Of course. It's hard to hear. Yes, yes. Is that better, Your Honor? Try to keep your voice up a little bit. You do want us to hear what you have to say. I do, indeed, and I thank you. The nature of this appeal is an appeal from the trial court's grant of summary judgment against my client, A. Edward Ezor. And it relates to whether or not Mr. Ezor had actually advised his client, or strike that, whether he advised ProCentury of a claim that ProCentury claims existed at the time that he renewed an insurance policy for a second term. The second basis of the appeal relates to whether or not the trial court should have stayed the matter pending the resolution in the State court of a variety of issues that were then before the State court, and they pertain to two petitions, and this court was sitting as a probate court. The motion to dismiss and or stay the matter was brought to the trial court, and that was denied. The State probate court wasn't dealing with the coverage issue, was it? That's correct. But the State probate court did, in fact, touch on that issue briefly. There was a motion by counsel who was appointed by the respondent to be relieved as counsel. But not surprisingly, close to a trial date, the State court judge wasn't going to say we're going to recycle this whole case. That motion was denied. That is correct, Your Honor. It did not speak directly to coverage issues. It did not. But the fact of the matter is, Your Honor, the matter was in front of the court at that time, and the record was being developed before the State court, and we would submit that it would have been prudent for the district court to have allowed the State court, upon development of that record, to then make a determination. Prudent or mandatory? Prudent, Your Honor. It's a discretionary determination. So you think it's an abuse of discretion? That's correct, Your Honor. That's the standard that would be applied to the second case. What harm did your client suffer from that failure to defer? Yes, Justice Tashima. The harm that we would argue was presented to my client was primarily that he was being forced to fight a two-front war. He was forced to not only defend himself in the State court action regarding the probate issue. What is he claiming? He wasn't able to do that competently? Well, he was not able to appoint his own counsel and proceed in the defense of the matter. He was too close to trial for him to have been able to effect it. Well, that has nothing to do with whether or not it was an abuse of discretion not to defer to the State court, right? Well, we would submit, Your Honor, that Mr. Ezor was being tasked with actually trying to keep the lawyer who had been preparing him for trial in the State court in the case, all the while fighting against that very lawyer who actually said to the trial court in the State court that he was adverse to my client, Mr. Ezor, at the time that that lawyer tried to withdraw from the case. So you have a situation where Mr. Ezor is being asked to defend himself against claims of negligence in the State court, all the while fighting against the very lawyer who's being called upon to defend him in that State court action. None of that's affected by whether the Federal action proceeds or not. You've got the same problem if you're being represented or your client's being represented in the State court action by a lawyer whose loyalty he's not sure of. That's not – how is that affected by whether or not the Federal action continues or is stayed? Well, we would argue, Your Honor, that the court could have made a more informed and better decision with respect to a record that had been more fully developed had it allowed the State court proceeding to – When you say better, though, I mean, I ask you again, what was the prejudice? The prejudice to Mr. Ezor, Your Honor, was simply, as we've asserted, that he was being called upon to divide his time and his focus in the – So the question is, so what? You're saying he couldn't do it? It proved difficult, Your Honor. It proved – it was costly and it was certainly a distraction. You mean it's more costly than otherwise? Certainly, Your Honor. Why is that? Well, he hired another lawyer to defend the Brown petition and ultimately – Well, that was going to happen because he never reported the Brown petition to the insurance carrier in the first place. Right. Well, we would submit, Your Honor, that he did, in fact, report it to the insurance company. During the first policy period, he had communications with his insurance agent and – He never sought coverage, did he? He did not. He did not. Why didn't he seek coverage? The reason Mr. Ezor didn't seek coverage for the Brown petition, and that's one of the first questions that I asked him and I wasn't sure why he didn't, that particular claim was brought by Mr. Brown at a time when Mr. Ezor and Mr. Brown had a good relationship. They were on the verge of settling that dispute, according to Mr. Ezor, and they were not going – as far as he knew, that claim was going to go away. That's the first reason. So he had – He later, on the renewal policy, stated, wasn't that true, that he had no reason to believe that there is any basis for any claim? Well, the policy language we would submit, Your Honor, does not – and that Mr. Ezor didn't have an obligation to report the first claim. I'm sorry. I thought in the application, one of the applications, he was asked whether he knew of any circumstance that it would lead to a claim, and he said no, even though the Brown petition was out there. Well, as he understood that, whether or not that was going to be a claim that would arise from the same facts or circumstances. Well, was it a pending claim? The Brown petition was a pending claim. So why wouldn't he disclose that fact to the insurance company? I believe he thought that he did, Your Honor, and he had been communicating with the insurance – an agent for the insurance company, and I believe the record indicates that he was of the impression that that information had been conveyed, that he thought the Brown petition was going to be resolved. And the other matter that he was most concerned about was there's a fairly high deductible on that particular policy. I believe it's around $10,000. So he was concerned that once he advanced that $10,000 and made a claim and the case settled, he would be out that money. So ultimately, I guess he made the decision not to pursue a claim on the Brown petition and instead waited to the Page petition. The current suit does not seek coverage for the Brown petition. That is correct, Your Honor. It's limited to the second, the Page petition. That's absolutely correct, Your Honor. And the second Page petition we submit is unrelated within the meaning of the law and within the meaning of the policies themselves insofar as it's a distinct claim. It has distinct characteristics and elements to it that would mandate that Pro Century pick up the defense of that claim and that it was not a claim that was first made through the Brown claim. And some of the distinctions that we point out in the papers, Your Honors, include the primary allegation brought by Ms. Page, who was a, she was appointed a conservative person of Jill Wiesel, who was the co-trustee with Mr. Ezor in the trust that the mother set up. And the primary claim relates to whether or not Mr. Ezor was negligent in handling her financial affairs, primarily the establishment of a sub-trust, which would have funded certain health insurance. And the Brown petition, on the other hand, was primarily focused on whether or not Ms. Wiesel, the sister of Brown, was competent to continue as a co-trustee and whether or not Mr. Ezor should have taken certain steps to see that she was removed as trustee. And the difference between these two types of claims include the manner of proof. For the first, relating to the competency, it's obviously going to determine, be determined by experts. They're going to talk about what her mental state is, whether she is competent to stay in as a trustee. Whereas the second one is simply whether or not Mr. Ezor was negligent, whether he should have funded a trust, whether he was putting money. But the reason for him, the reason it was alleged that he should have taken action with regard to her was, wasn't it the same thing? Her apparent incompetence to take care of herself? And ultimately, that would seem to be the principal issue in both variations. These are two variations in the same theme, aren't they? Well, the second one with respect to whether or not he was properly funding a trust to take care of her needs, that's a duty that he's supposed to undertake, irrespective of whether or not she was competent to do so or not. That's part of his duty. Well, she was a co-trustee herself. In most circumstances like this, you would expect somebody who's a co-trustee to be taking care of herself. The problem here was the perception that she wasn't capable of taking care of herself. That's why they looked to him to step in and take action, isn't it? Well, that's part of the Brown petition, and that is true. They did seek to hold Mr. Ezor to a standard that would have required him to make an assessment by virtue of expert testimony or whatever to demonstrate that she wasn't competent. But he had a separate duty with respect to his obligations as a co-trustee to pay her bills. That's the way the relationship had been established. It wasn't because she was incompetent. It was just simply the manner in which they had been relating to one another. She brought her bills into the office. Mr. Ezor saw that those bills got paid. One of them was a mortgage payment. One of them was a health insurance payment. These were distinct and separate obligations on Mr. Ezor's part that were supposed to have been the focus of the Page petition, whereas the Brown petition was simply his claim saying, Mr. Ezor, you should have known my sister was incompetent. You should have done something to remove her, and you didn't. And that's really the gravamen of the distinction here. And I see that I'm running into my rebuttal time, Your Honors, and I would just like to affirm that the policy of California is to err on the side of finding coverage. The cases that we've cited in our briefs make it clear that the insured only has to make a bare minimum showing that any factual feature of their relationship is covered. It's a broad standard, and we would submit that in this case it went the other way. There was a restrictive reading that required of Mr. Ezor that he prove that he was covered, whereas the obligation is the other way around. He only has to show that there's a bare minimum chance of coverage, and then the insurance company has to prove that under no possible circumstances could coverage exist. And this ---- The wrongful acts, related acts, proviso under coverage is pretty broadly framed, isn't it? It is indeed, Your Honor. It is. And we would submit, though, even as broadly as it is framed, it still doesn't cover the situation where the two separate claims are brought by two separate parties relating to two separate types of damages brought at different times. The Brown petition, in fact, they couldn't have even made a claim in the same manner as the Page petition because it didn't exist at the time. So there are some aspects to it that I'm reluctant to say overlap, but certainly one would not have trouble relating most any factual circumstance. There are some features to it that do overlap, but that doesn't mean that they're related, even within this broad definition of a relation in the insurance policy. And the last point, Your Honors, is that this is a summary judgment motion, and this was the trial court was to err on the side of finding against summary judgment. Any factual dispute should have allowed for this case to go to a jury and have the jury decide whether or not coverage exists. And in this case, that didn't happen. Mr. Ezell was denied that right. Thank you. Thank you. Good afternoon, Your Honors. May it please the Court, Lisa Darling Alderson on behalf of Pro Century Insurance Company. I first just want to talk a little bit about the timeline because Mr. Ezell's counsel touched on that. Here, Mr. Brown was making claims against Ezell before he even filed his petition. He sent several letters and e-mails to Mr. Ezell, demanding that he have his sister, Jill, removed as a co-trustee, demanding that he take other actions, including paying her bills. He raised in his February 27, 2007, e-mail that he was concerned about Jill because she was not paying her bills, including her mortgage and her car payment, and that he felt that a special needs trust needed to be established for her so that her bills would be taken care of for her. That was before even the first policy incepted. Now, then in March of 2008, before the first policy incepted, Mr. Ezell, in his capacity as a trustee, filed a petition in the probate court alleging that he has been constantly harassed by Mr. Brown about taking Jill out as being a co-trustee. So this was a problem he was aware of. He went to the court to try to get the court to help him stop Mr. Brown from bothering him about it. Despite all of that, when he submitted an application to ProCentury in August of 2008, when ProCentury asked if you are aware of any facts, circumstance, situation, act, error or omission, which might lead to a claim, he said no. And he didn't bother to tell ProCentury about the existence of his duties as trustee of the Ezell Trust. Was there a comparable application when he renewed the policy? Yes. Was there the same question? It was the exact same question, and again he said no. So two applications in a row, while he's got a pending, ongoing dispute with Mr. Brown, even after Mr. Brown filed his petition, which clearly seeks to impose personal damages against Mr. Ezell for breaches of trust. He says no. I don't know about anything. So how does the insurance carrier react differently if the Brown initially the demand letter or whatever you would characterize the communication prior to the first application, and at the time of the second application the Brown petition had been filed, if that or they had been disclosed in those respective applications, what's different with the insurance carrier? Sure. The first time, the first application, he would have still had a prior pending claims made policy with another carrier. And ProCentury or his broker would have told him you need to tender that and let that current carrier know, because that current carrier was the one who should have been covering this all along. Well, covering certainly Brown, and there's not a claim in front of us and apparently to your client to cover Brown. You're correct. But this is all one big related claim of Mr. Ezell's failure to handle this trust appropriately, which only had two beneficiaries. It was Mr. Brown and his sister, Ms. Ezell. Are you saying that under the wrongful related acts clause that if any claim is made, regardless of how untethered it may be to another claim, that because it involves the specifics of another claim, even if it's a totally separate article of the trust, that as long as there's a claim that Mr. Ezell failed to discharge his overall duties as a trustee, that that foreclosed any further claims if he didn't report a, say, a modest claim of some kind of slip? No, I'm not saying that. There may be some imagined circumstances that are before this Court where something that happened in Mr. Ezell's handling of this one particular trust would be so very separate from what happened in this case that maybe it would not be a related wrongful act. But that's not what we have here. We have a circumstance where the issue that arose way back in 2007 was whether or not Jill Ezell was competent, first of all, to serve as a co-trustee, second of all, to take care of her own needs, to take care of her own financial health and pay her own bills. That was raised years ago. And Mr. Ezell never bothered to let us know that this bubbling dispute was going on. Even after Mr. Brown had served his petition. Now, Mr. Brown's petition didn't just seek redress of his own injuries. It very clearly asked for things to be done on behalf of his sister, Jill Ezell. His petition specifically said that Mr. Ezell had failed to disperse funds in a timely manner to the residual beneficiaries. There's only two of those, Jill and Robert. He also alleged that the trustees had caused significant losses to the trust and to the beneficiaries, Jill and Robert. He also alleged in that petition that a special needs trust needed to be set up for Jill because she was unable to take care of herself. So his petition was not limited only to the damage that he had suffered. He's concerned about his sister. He's raising these issues not just because he thinks that she's damaging the trust in him, but that she's damaging herself. That was what was happening in this case. Going back to the timeline. Well, I'm a little confused or uncertain anyway. There's the special needs trust and then there are the sub trusts. Right. Okay. And they both seem to talk about the special needs trust, the Brown and the Page petitions. But isn't the, I may be misunderstanding what Mr. Ezer is arguing, but he seems to advance an argument that his claim that under the Page petition duty to defend is to deal with the specifics of failure to establish or whatever the sub trust. That's correct. That's what he's arguing. So what's wrong with that? Why isn't that a different kind of claim? For one, I believe it's factually incorrect. The Page petition, if you take a look at it, doesn't say the word sub trust anywhere. The first cause of action states that Mr. Ezer needed to establish a special needs trust for Jill because she was incompetent and one of the results that naturally flowed from his failure to do that was that her insurance was not paid. That was the claim asserted in that Page petition. The sub trust issue was raised by Mr. Ezer, as I understand it, as a defense. He was saying, well, but I did establish a sub trust for her. I just didn't fund it. Now, the court in the ruling, which is before us, the probate court's ruling is before us, explains that under the trust that Mr. Ezer was supposed to create two sub trusts, one for Robert and one for Jill. He only created one for Jill. And the probate court also explained that forming that sub trust was step one in creating a special needs trust. He needed to get the sub trust going and then he would have to go forward to have her deemed incompetent and have that, I think, converted over into a special needs trust. But the reason the sub trust was formed in the first place for Jill was specifically to get her bills paid since they weren't getting paid. And the probate court in her ruling, and you can look at pages 963 to 964, 960 to 61, in that area is where the judge in the probate court is explaining that Mr. Ezer is responsible for the lapse in payment of Jill's health insurance because Ezer had failed to properly assess Jill's capacity and take control of her bills in performing the sub trust. Now, she determined that he made mistakes in handling that sub trust because she was not able to pay for her own bills, but at the same time determined that she was not so incompetent that it needed to be a special needs trust. That was what ended up happening. But the reason Mr. Ezer was found liable was because he didn't recognize that she was unable to pay her own bills and take care of that through the sub trust. There's obviously some overlap between the two petitions, the Page petition and the Brown petition, but is it your position that to meet the related wrongful act definition, there only has to be a minimal degree of overlap? In other words, the two petitions don't have to be exactly the same? They definitely don't have to be exactly the same. They just have to have some overlap? They have to be related, as the term is used by the... They have to have a common nexus. That's right. Related as a conclusory of common nexus is slightly more precise. I don't know. The related wrongful act definition here says there has to be a common nexus with any circumstance, situation, event, et cetera, or any series of circumstances, situations, events, or documents. Now, one of the issues that Mr. Ezar raises in his briefs is they're arguing that because the specific failure to pay the health insurance premium didn't happen until shortly after Mr. Brown filed his underlying petition, that that means that it cannot be deemed related. And that is simply not true because the definition clearly says a series of circumstances, situations, or events would be sufficient to be related. This was all one series of conduct of taking care of this trust, in particular taking care of Ms. Jill Wiesel and her incompetency issues and paying her bills. That subtrust was paying some of her bills. It just didn't pay all of them. And that was the problem. In addition, the reason I sent in the new case yesterday was because in that case, versus Darwin Professional Underwriters, the conduct that was deemed to be related and the two petitions that were deemed to be related concerned conduct that was several years apart. The first petition was a writ of mandate, simply trying to get the Borough of Muzik to follow its zoning laws and to try to do an investigation into the plaintiff's neighbors. They were unhappy with what was happening at the neighboring land. And so that did not seek any damages on behalf of the plaintiff. It just said, please, city, do what you're supposed to do and enforce your zoning laws. Then four years later, they file a complaint, this time seeking personalized damages, saying that the city has been retaliating against them, violating their free speech rights, preventing them from arguing or presenting in front of public hearings. None of those things had happened at the time of the prior petition. But the court still found them to be related under very similar language, because it still all arose out of the exact same zoning dispute. The same dispute was at issue between the plaintiffs and the city about the zoning issue with their neighbor. And here is a very similar circumstance. We have a dispute that's going on about whether or not Jill Wiesel is competent, whether or not she's competent to be a co-trustee, and whether or not she's competent to care for herself. And that's going on. It's been going on for years, from 2007 until 2011, when it's finally, 2010, I'm sorry, when it's finally tendered to pro-century. I haven't read your latest case yet, but let me ask if it arises in a comparable context. And to explain, I've seen cases over what's related before. I'm confident I've never seen one quite in a context like this, where it ultimately goes to the question of is there coverage at all. More often it's related to what plan year or which of multiple carriers is responsible, whether this relates back. The case you've recently cited to us, was it a context like this one? And if not, does the difference matter? It was a context very much like this one. It was a professional liability claims first made and reported policy that had been issued to the city for their professional liability exposures. And the court found that there was no coverage under that policy, because those two different actions, the mandamus petition and the later damages action filed by the same plaintiffs, were related, as that term was defined by that policy, and the definition was very similar to the one here. One of the things that makes this case peculiar is the argument were actually, the literal argument has to do with whether what is now called the page petition claim should have been reported during the preceding policy with the same carrier. What would have been different if it had been reported the previous year at the same time the Brown petition was filed? Okay. Let me back up a little bit here. First of all, what I have argued all along is that it should have been reported to the prior carrier when Mr. Brown was making his very clear complaint. Based on the complaint letters that received from Mr. Brown prior to the filing of his petition. So that fits much more a traditional type model, whether the claim arose before there was any coverage available from this carrier. But it's been articulated to us based on these two successive policies. I just want to make sure I understand what you're saying. Is it basically that there not only shouldn't have been coverage in the second policy year, there shouldn't have been coverage in the first policy year, because the page petition should have related back to the Brown initial demand letter? Right. Those, if you take a look at the definition of claim under the policy, those Brown letters definitely qualify as a claim. He was demanding damages. He was demanding his particular actions and saying, if you don't do it, I'm going to sue you. And I hope your insurance carrier has enough money. That's the sort of things he was saying in those letters. Those were clear claims. So I think ultimately this should have gone back all the way to the carrier who was the prior century. But your argument, but that's a nondisclosure issue, claim. It is. But nondisclosure is a defense to a particular cause of action. And we did plead the nondisclosure in this case as one of the bases for why there should be no duty to defend here. Well, that hasn't been reached. That wasn't the basis for the district court's ruling. You're correct. We did, however, raise that as an alternative basis. It was raised in the complaint and it was raised in the motion for summary judgment. Can I ask you to address on the coverage side? At some point, well before you declared there was the coverage issue, you had notice of the nondisclosure of the Brown petition. And yet there was a length of time in which the Brown petition had not been heard. Before you, your company, declared non-coverage, there was no reservation of rights prior to that time. We provided counsel. Under Buss v. Superior Court at footnote 27, the court states a pretty clear rule that failure to support the duty to give notice of non-coverage and dropping the duty to defend precludes you from recovering reimbursement for the time period. So is that not an issue in this case? And shouldn't we remand, if we agree with you otherwise, to the district court to figure out or adjust the amount of money you're entitled to? I believe in this case that does not apply. And the reason is because we have material misrepresentations in the application. And so under the L.A. Sound court decision, when a carrier proceeds on a material misrepresentation basis, and in that case they rescinded the policy, there's no need for notice, because it's an unjust enrichment analysis. Here Mr. Ezor clearly did not disclose to us and lied on the application and two subsequent applications. And he should not get the benefit of the coverage for this claim that he failed to disclose. Was that ever addressed in the district court? I did raise the L.A. Sound case in the district court in my motion for summary judgment, and I raised the unjust enrichment argument. A case that I think directly addresses this issue is Williamson and Vollmer Engineering v. Sequoia Insurance Company. That's a 1976 case at 64 Calab III, 261. And at page 275, the court found that under very similar circumstances where the insurer decided not to rescind but to instead use the material misrepresentation as a defense against a particular claim, as we're doing here, they said that it was proper for the court to reform that policy to not cover that claim that was not disclosed on this exact same application question about whether or not that you're aware of certain circumstances that may lead to a claim. And the court found that full reimbursement of all the defense costs expended was appropriate under an unjust enrichment theory. I would like to also address your issue about the period of time before the reservation of rights was issued. Here, procentuary received this notice, and the first time the claim handler talked to Mr. Ezor, Ezor said, oh, I'm getting deposed tomorrow. And he said, whoa, hold on, I got to get somebody in there for you. So he immediately got him defense counsel to get in there so he could be defended. He had not, it is absolutely undisputed that he had not received and reviewed the Brown petition at that point in time. Now, there is some dispute they've tried to raise about when procentuary should be charged with the knowledge of that Brown petition, but it's undisputed he did not have it in front of him, the claim handler, when he made the decision to assign defense counsel. The only, the period of time between assigning defense counsel and the decision to withdraw coverage was only 77 days. We're talking 11 weeks here. That is not a long period of time to make a major coverage decision that could result in major consequences to procentuary. The case law has found that... Possibly. I mean, that could have happened. It did not happen. Instead, they referred it to coverage counsel, to my office, and we analyzed the issue and decided how to proceed. But case law has never found in a period of a number of weeks to be too long to create an estoppel. Case law has been, and Admiral v. Debor at 442 F. Second 958 said nine months was an appropriate amount. I was raising it on the bus issue, and you've answered that. So the rest is in debrief. Okay. Very good. The only other issue that I would like to argue... Make it brief. Okay. I'd like to just raise is that the arguments that anything that happened in the probate court should somehow stop procentuary from actually filing an affirmative coverage complaint I think is just absurd. The coverage issues were not before the probate court. She clearly stated she was not going to make... Well, there wasn't an argument that you couldn't file the complaint. The argument was that the coverage action should have been stayed. Right. Okay. Well, even with respect to that, I will mention that at the time of the stay, the court issued its order on January 24, 2011 denying that, and the trial in the underlying probate court was already done at that point in time. The trial in the underlying probate court was over on January 6. So the fact of the matter is that there really was not an overlap here. Thank you. Thank you. I'm going to be very brief, Your Honors, and I appreciate it. I just want to reaffirm that I believe that the court had focused a bit on the breadth of the language in this particular policy and how broadly it does define the limited acts. And my client concurs, obviously, that this is very broad, way too broad to be imposed under these circumstances, particularly given the disparate acts under these two policies. And buttressing that is the fact that the counsel that was appointed by Procentury, I just wanted to reiterate, this was a lawyer who actually participated in making determinations as to whether or not coverage was proper. He was analyzing the Brown petition at one point in time. Well, I know this is an issue that's been contested because I know Procentury's brief says to the contrary. Do you have a record reference you can give us that might support the proposition? Yes, I do, Your Honor. When Mr. McCarthy was conferring with counsel for, with Procentury, he was actually billing. He was submitting, billing records for reviewing the Brown petition. And I believe, Your Honor, and he actually said to the, okay, that is at excerpts of the record 743, Your Honor, and he bills for reviewing Brown petition, which he billed on April 3, 2010. He actually also goes so far as to... Presumably, that's what the deposition was about, wasn't it? Wasn't it coming up in the Brown case? It was. So if he's going to defend your client at a deposition, wouldn't he need to know what the petition says? He would, but he's also, if you look at the billing records themselves, he's reviewing documents that Mr. Green was filing on behalf of Mr. Green, which is a child judge, that he has, that Mr. Esor has lost confidence in him and that he is, at that point in time, adverse to Mr. Esor. Well, he is serving as Mr. Esor's counsel. I presume Mr. Esor is the moving party behind getting him set aside so that Esor isn't defended by this Procentury attorney. So it sounds to me if he's telling the probate court what you just cited, it's because Mr. Esor wanted him to. Well, the reality is he was trying to get out of representing Mr. Esor because he, along with Procentury, had made a determination that, according to them, coverage did not exist. So he was moving the trial court and was sitting as a probate court. So how does that tell me he's involved in the coverage decision? If you look at the billing records, they indicate that he was conferring with Procentury and making determinations as to whether or not that particular policy would... Is that the same 743 citation you gave me? Are there any others that I should check? I believe that is, Your Honor, and if I... And it may be in your brief. It is, and if I could respectfully submit the particulars supplementarily, I would be glad to do that, but it is... If it's in your brief, I'll find it. If not, you can submit a 28-J letter. Thank you, Your Honor, and it is in the brief. The other issue with respect to counsel's statement that there's a nondisclosure defense and it relates to Justice Fischer's comment about the reimbursement and whether or not the failure to reserve rights should have some bearing. And we would submit that that's certainly a factual issue that should be, at a minimum, sent back to the trial court to determine whether or not the reservation of rights had actually occurred and what effect that has on the time period after the failure to reserve rights. Did you raise that issue in the district court? We did not. We did raise the issue of reimbursement, Your Honor. No, but I mean how much reimbursement you're entitled to. There was a motion to amend the judgment once a particular amount of fees was ascertained by Procentury. But the basis of the motion was a different realm, wasn't it? That's correct, Your Honor. So you didn't raise this issue in the district court? We raised the failure to reserve rights and its effect, but we didn't argue the specific time period should be analyzed as to what should and shouldn't become. That is correct. But we did, in fact, raise the issue of the failure to reserve rights. And unless the Court has any other questions, Appell will conclude. We thank you. We thank both counsel for your helpful arguments in a complicated case. Thank you, Your Honors. That concludes the argument on the case. That's the only case we have on this calendar, so we are adjourned.
judges: Tashima, Fisher, Clifton